STATE, EX REL. MICHEL A. HARTIGAN, APPELLEE, v. SPERRY & HUTCHINSON COMPANY, APPELLANT.

FILED DECEMBER 24, 1913.   No. 18,058.

1. **Quo Warranto:** CORPORATIONS: OCCUPATION TAX: JUDGMENT OF OUS-
   TER: EVIDENCE. Where a corporation, delinquent in the payment
   of an occupation fee, as provided in section 4260, Ann. St. 1911,
   applies to the secretary of state to be reinstated, as provided in
   section 4261, and in good faith pays to such secretary the full
   amount of fee and penalty demanded by him, the fact that the
   secretary may, through oversight or under a misconstruction of
   the law, have demanded a less sum than is required, will not, in
   the absence of a demand upon the corporation to pay the required
   balance and a refusal or failure on its part to make the payment,
   sustain a judgment of ouster against such corporation.

53

2. Constitutional Law: POWER OF LEGISLATURE: POLICE POWER. Statutes enacted by the legislature in the exercise of the police power must not violate rights guaranteed to the people by the constitution. The legislature may not under the guise of protecting public interests arbitrarily interfere with private business.

3. Courts: JURISDICTION: LEGISLATIVE ENACTMENTS: "GIFT ENTERPRISE." And the fact that the legislature, in an act making it a criminal offense for any person to engage in any gift enterprise, describes a legitimate private business enterprise, and provides that any person engaged in such business shall be held to be engaged in a gift enterprise within the provisions of the act, will not oust the jurisdiction of the courts to determine the true character of the business so attempted to be prohibited.

4. Constitutional Law: POWER OF LEGISLATURE: POLICE POWER. Chapter 179, laws 1911, set out in the opinion, in so far as it might be construed to prohibit the business of giving and redeeming what are commonly known as "trading stamps," is an unreasonable interference with a lawful business, not within the police power of the legislature, and is in conflict with article I of the Bill of Rights and the fourteenth amendment to the Federal Constitution.

APPEAL from the district court for Adams county: HARRY S. DUNGAN, JUDGE. *Reversed and dismissed.*

*Frank P. Wolcott, Talbot & Allen* and *Tibbets, Morey & Fuller,* for appellant.

*J. W. James, M. A. Hartigan* and *Don C. Fouts, contra.*

FAWCETT, J.

The relator, the county attorney for Adams county, instituted proceedings in *quo warranto* in the district court for that county, to oust the respondent from the state of Nebraska, and from a judgment of ouster the respondent appeals.

The pleadings, consisting of the amended information, the answer and reply, are voluminous and will not be set out. A reference to the real points in issue will be sufficient. The judgment of ouster was based solely on the following findings:

"The court further finds that on August 25, 1911, after

the respondent had been doing business in the state of
Nebraska for three or more years without having paid
an occupation tax, it appeared before the secretary of the
state and filed with him a statement that it was delinquent
under the law and that it wished to be reinstated. The
court further finds that at the time it complied with the
law on this subject in all respects, except that it failed to
pay a sufficient amount as an occupation tax, as will be
hereinafter more specifically set forth; that it paid $10 for
occupation tax, together with $10 penalty, for the year
ending June 30, 1910, and was thereupon reinstated; that
on the same day the respondent paid to the secretary of
state a $10 occupation fee and $10 penalty for reinstate-
ment to cover the year ending June 30, 1911; that on the
same day respondent paid to the secretary of state $10 to
cover the occupation permit for the year ending June 30,
1912, and that subsequently the respondent paid to the
secretary of state $100, being the occupation tax for the
year ending June 30, 1913. The court further finds that
said respondent at the time of its application for reinstate-
ment and upon the payment of the sums heretofore set
forth was thereupon duly reinstated by the secretary of
state. The court further finds that under the law the re-
spondent should have paid $100 for each of the years for
which it paid only $10, and that the respondent, there-
fore, in this respect failed to comply with section 4260,
Cobbey's Statutes of 1911. The court further finds that
at the time of reinstatement of the respondent by the sec-
retary of state such corporation was in default under sec-
tion 12031, Cobbey's Statutes of 1911, providing for the
filing of a report with the attorney general of the state of
Nebraska. The court, therefore, finds that the respondent,
by reason of having neglected to comply with the require-
ments of the statute relative to foreign corporations as
above set forth, has forfeited its rights to do business in
the state of Nebraska, and is now wrongfully doing busi-
ness in this state, and that it should be ousted therefrom."

In deciding the case upon these findings, the court ig-

nored the main ground upon which relator seeks to oust the respondent, viz., that the business in which respondent is engaged is prohibited by chapter 179, laws 1911. That relator considers this the main ground, and the only one which would permanently give the full relief he seeks, is shown by the fact that his counsel, in his brief, by not discussing, practically abandons all of the other grounds of complaint set out in his amended information, and directs his argument wholly to the constitutionality of this act.

The record shows that at the time respondent was reinstated it paid to the secretary of state the full amount of occupation tax and penalty demanded by the secretary for each of the years named, and by its answer it alleges that it "is willing and desirous and stands ready to comply with all and every lawful provision of the statutes of said state." The fact, if it be a fact, that the secretary of state may have erred as to the amount required to entitle respondent to reinstatement is not sufficient to sustain a judgment of ouster, and especially so when respondent was before the court offering to fully comply with every statutory requirement. The record also shows the filing by respondent of its reports with the attorney general. The court, therefore, erred in its findings upon which it based its judgment.

We might rest here, and remand the case for further proceedings, but, as such a course would not end the litigation, we have concluded to consider the main question, which has been so ably argued by counsel on both sides in their briefs and at the bar.

Chapter 179, *supra*, is as follows: "An act to prohibit gift enterprises and to provide punishment for a violation of the same.

"Section 1. (Gift Enterprise.) It shall be unlawful for any person or persons to engage in any gift enterprise in this state. Every person who shall sell or offer for sale any real estate or article of merchandise of any description whatever, or any ticket of admission to any exhibition

or performance, or other place of amusement, with a promise, expressed or implied, to give or bestow, or in any manner hold out the promise of gift or bestowal of, any article or thing, for and in consideration of the purchase by any person of any other article or thing, whether the object shall be for individual gain or for the benefit of any institution of whatever character, or for any purpose whatever, shall be held to be engaged in a gift enterprise within the provisions of this act.

"Section 2. (Same—Penalty.) Any person or persons who shall engage in any gift enterprise in this state shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not exceeding five hundred dollars, or imprisoned in the county jail not exceeding six months, or both, at the discretion of the court."

The amended information alleges substantially that in· violation of this act respondent is conducting a gift enterprise at Hastings, Nebraska; that the method of conducting its business is to hold out the promise of a gift or bestowal of certain trading stamps to any person who may purchase goods, and their redemption at its place of business, for the benefit of a certain institution, to wit, Stein Brothers, with the intent of building up and maintaining a monopoly and obstructing open competition; that Stein Brothers conduct clothing, grocery, millinery and furniture departments; that respondent and Stein Brothers have been and are now engaged in the violation of this act. The method of issuing trading stamps by merchants to their customers and of their redemption by the trading stamp company is a matter of common knowledge and need not be detailed here. The business has grown to enormous proportions and is now being carried on in practically every state in the Union. As a result of present-day agitation along the line of what some of the courts have characterized as governmental paternalism, the legislatures of many states have been induced to pass laws substantially similar to the one under consideration here. While they differ somewhat in phraseology, they are, as

we have said, substantially the same. A reading of them will show that, while their real purpose is attempted to be concealed in the language used, it is apparent that such real purpose is to abolish the trading stamp system as a method of advertising by retail merchants. The question is: Is it within the power of the legislature to do so? The police power of the state has in recent years, at the demand of a persistent and in many cases an aggrieved public, been greatly extended by judicial construction; but the courts have not yet, except in very few instances, gone so far as to hold that under this power a legislature may forbid contracts which have always been held to be within the constitutional right of persons in every state to possess and acquire property, to transact legitimate business, and to fully enjoy freedom of contract in relation thereto.

In considering a similar statute, in *Young v. Commonwealth*, 101 Va. 853, 867, a case in which the business of the respondent here was being considered, it is said: " 'The act, as we construe it, prohibits a person from selling a given article, and at the same time, and as a part of the transaction, giving to the purchaser a stamp, coupon, or other device which will entitle him to receive from some third person some other well-defined article in addition to the one sold. This is equivalent to declaring that it is illegal for a man to give away one article as a premium to the buyer for having purchased another; for, as already intimated, it can make no possible difference that the article given away with the sale is delivered to the purchaser by a third person instead of the seller himself. We think it is clear that such a prohibition is an unwarranted interference with the individual liberty which is guaranteed to every citizen, both by our state constitution and also by the fourteenth amendment to the constitution of the United States. * * * This inalienable right is trenched upon and impaired whenever the legislature prohibits a man from carrying on his business in his own way, provided always, of course, that the business and the mode of carrying it on are not injurious to the public, and

provided also that it is not a business which is affected with the public use or interest.' * * * In the case at bar the element of chance or lottery is entirely wanting. There is no uncertainty or indefiniteness about the premiums. The articles are certain and fixed. They are kept constantly on exhibition, so that the person about to collect a book of 990 stamps has full opportunity to make up his mind what article he will select from the store of the trading stamp company when he is ready to have his book of stamps redeemed. From the facts certified it appears that the articles for the redemption of stamps are on exhibition at the store of the company, that the customer who bought the tomatoes and received the stamps knew through the advertisements of the company that the defendant gave the stamps with all cash sales, and for that reason purchased from the defendant in preference to some merchant who did not give the stamps; and that said customer knew the general value and character of the articles from which he would be entitled to have his selection in redemption of stamps collected by him. We can find nothing in the contract between the Sperry & Hutchinson Company and the defendant, nor the transactions with customers in pursuance of such contract, that is not a legitimate exercise of one's right to prosecute his business in his own way. As already said, 'it appears to be simply one of the many devices fallen upon in these days of sharp competition between trades people' to attract customers, or to induce those who have bought once to buy again, and in this respect is as innocent as any other of the many forms of advertising. * * * Indulging every possible presumption in favor of the validity of the statute now under consideration, we are constrained to the conclusion, upon reason and authority, that it is not a valid exercise of legislative power. It attempts to prohibit and restrain the defendant in the lawful prosecution of a lawful business."

In April, 1911, the legislature of the state of Massachusetts, under a practice prevailing in that state, submitted to the supreme court a bill prohibiting gift enterprises,

with this interrogatory: "Would the provisions of the bill now pending in the general court, which prohibits gift enterprises, being House Bill No. 1097, a copy of which is transmitted herewith, be constitutional if enacted?" To this the chief justice and the six associate justices of that court, in *Opinion of the Justices*, 208 Mass. 607, gave the following answer:

"We, the justices of the supreme judicial court, having considered the question upon which our opinion is required under the order of April 4, 1911, a copy of which is hereto annexed, are constrained to answer it in the negative. The principles applicable to statutes of this kind were considered and discussed in *Commonwealth v. Emerson*, 165 Mass. 146, *Commonwealth v. Sisson*, 178 Mass. 578, and *O'Keeffe v. Somerville*, 190 Mass. 110. In the last of these cases a statute was held unconstitutional in part upon grounds which are equally applicable to the house bill referred to in the order, and which require us to hold that the provisions of this bill are unconstitutional.

"The bill is drawn in broad terms, and it purports to forbid transactions that are not different in principle from contracts of sale which always have been held to be within the constitutional right of persons in every state to possess and acquire property, to transact legitimate business, and to buy and sell and get gain. * * * There is nothing in the conduct proposed to be prohibited that necessarily appeals to the gambling instinct or involves any element of chance. Such statutes and ordinances have been held unconstitutional by the highest courts in a large number of states. (Citing an unusually large number of cases from many states.)

"The court of appeals of the District of Columbia, in its decisions in *Lansburgh v. District of Columbia*, 11 App. Cas. D. C. 512, and in *District of Columbia v. Gregory*, 35 App. Cas. D. C. 271, stands almost alone, although it has been followed by one or two federal judges, in reaching an opposite conclusion." To that opinion the court attached the following syllabus: "A statute making it a

criminal offense to engage in any gift enterprise, and providing that a person who in any manner holds out a promise of gift or bestowal of any article or thing for and in consideration of the purchase by any person of any article or thing shall be deemed to be engaging in a gift enterprise within the meaning of the statute, would be unconstitutional." In addition to the many cases there cited, holding in harmony therewith, we add *Leonard v. Bassindale*, 46 Wash. 301; *Territory of Hawaii v. Gunst & Co.*, 18 Hawaii, 196.

As opposed to this formidable array of authorities, relator is compelled to rely upon *Lansburgh v. District of Columbia, supra, State v. Hawkins*, 95 Md. 133, and *Humes v. City of Ft. Smith*, 93 Fed. 857, the last being an opinion by a district judge. As against the last case respondent cites *Humes v. City of Little Rock*, 138 Fed. 929, the opinion being by another district judge in the same state. *State v. Hawkins, supra*, is completely destroyed as an authority in this case by *State v. Caspare*, 115 Md. 7, 80 Atl. 606, in which case the Maryland court gets squarely in line with the many other states cited and followed by the supreme court of Massachusetts.

We deem it unnecessary to prolong this opinion, as the reasoning in support of our conclusion exhaustively appears in many of the cases cited by the Massachusetts court. The reasoning of those cases compels our concurrence. We therefore hold that chapter 179, *supra*, in so far as it might be construed to prohibit the business in which the respondent is engaged, is in conflict with article I of the Bill of Rights, and the fourteenth amendment to the Federal Constitution.

The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.

ROSE, J., dissents.