COMMONWEALTH *vs.* STEPHEN CLAY.

Essex.    March 27, 1916. — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Salem,* Regulation of stands in public market. *Municipal Corporations,* By-laws and ordinances. *License. Easement,* By prescription.

St. 1816, c. 103, gave power to the selectmen of the town of Salem, which now is retained by the city council of Salem under St. 1912, c. 559, Part I, § 63, to regulate stands in the market adjoining the market house in that city, and the city council in 1915 passed an ordinance providing that the board of control of the market house under the direction of the city council "may assign stands within said limits, for the sale of provisions and other articles," that "No person shall occupy any other stand than the one so assigned" and that "Such board of control may subject to the direction of the city council from time to time fix such sums as they may think proper as compensation for permission to stand in the market as aforesaid and shall issue permits to all persons so authorized." The board of control subject to the direction of the city council "established and fixed the sum of $50 per year as compensation to stand in the market for the purpose of selling commodities." Upon a complaint for occupying a stand within the limits of the market without the license thus required, it was assumed in the absence of any contention to the contrary that, although the city council could not delegate the power of granting such licenses to the board of control, a body not named in the charter, the action of the board of control in establishing the amount of the license fee was approved by the city council, and it was *held,* that the question "whether the city of Salem could require a permit and the payment of a fee therefor before one could occupy a stand in the market" must be answered in the affirmative.

In the same case it appeared that, before the passage of the ordinance in question, for "nearly one hundred years the premises have been used for a public market place and without charge to the public," but it also appeared that during this period ordinances had been passed "relative to the market house and the market," which presumably had been enforced, and it was *held,* that no uninterrupted adverse use had been shown which deprived the city of the use or control of property held for the benefit of the public.

COMPLAINT, received and sworn to in the First District Court of Essex on September 14, 1915, charging that the defendant on August 21, 1915, at Salem "did occupy a stand within the limits of the market, to wit, the area south of the market house for the sale of certain articles, to wit, peaches, the said stand not having been assigned to him by the board of control having supervision of the said market and area," in violation of an ordinance of the city of Salem which was passed on April 23, 1915, to take effect on May 3, 1915.

In the Superior Court before *Quinn,* J., the case was submitted upon an agreed statement of facts which contained the facts that are stated in the opinion. After a jury was impanelled the counsel for the defendant stated that upon the agreed facts the jury would be justified in returning a verdict of guilty and suggested that the judge should order such a verdict. Thereupon the judge ordered the jury to return a verdict of guilty, which they did. With the consent of the district attorney, and at the request of the defendant's counsel, who stated that he simply wished to raise a question of law, "whether the city of Salem could require a permit and the payment of a fee therefor before one could occupy a stand in the market," the judge reported the case for determination by this court. If the ordering of the verdict was correct, judgment was to be entered accordingly; otherwise, the verdict was to be set aside.

The revised charter of the city of Salem is contained in St. 1912, c. 559. Section 63 of Part I of that chapter is as follows: "Nothing contained herein shall be construed to affect the authority, power, privileges, rights and obligations created and given by any special act of the General Court and now vested in and exercised by the city of Salem, unless the same are inconsistent herewith."

The case was submitted on briefs.

*W. H. Southwick,* for the defendant.

*L. S. Cox,* District Attorney, for the Commonwealth.

BRALEY, J. If the ordinance for the violation of which he has been prosecuted is valid, the defendant concedes that the verdict of guilty must stand. By the provisions of the deed under which the city of Salem acquired title, the land granted was to be used "solely for a city way or public square or market and that no build-

ings are ever to be erected thereon." The defendant's first contention is that under the deed he had the right in common with his fellow citizens to use the premises for the sale of vegetables and fruits to the public without paying the "compensation for permission to stand in the market" required by the ordinance. The "market" is defined by § 2 of the ordinance as "the streets on the east and west sides of the market house in Derby Square and the area south of said house," which includes the portion occupied by the defendant while vending his commodities. But while no buildings are to be erected, and the granted premises must be kept open for a city market unless used as a public square or way, no restrictions or conditions are found limiting the power of the city to regulate the use of the market. It appears that, twenty years before the grant, the market house had been erected on land given to the town contiguous to the market "for the purpose of a market house and town hall to be erected thereon by said inhabitants for the use of the town, together with another piece of land and flats for the use of a fish market," and, a house having been built, the market after its acquisition has been used in connection therewith. By the St. of 1816, c. 103, the selectmen, when Salem was a town, were authorized "to make any rules and orders, not repugnant to the Constitution or laws of this Commonwealth, for the due regulation and government of the Market-house of said town, and of the Market-carts, waggons, sleds, sleighs, and other vehicles or carriages, used for marketing in said town, and of the marketmen who frequent said town for the purpose of buying and selling provisions and other commodities in open market; and the said Selectmen be, and hereby are authorized to appoint, from time to time, suitable places in the streets, squares and other public places in said town, in which all waggons, carts, sleds, sleighs, or other vehicles or carriages, containing provisions, wood, hay, barrels, or other commodities for sale in open market, shall stand, for the purpose of such sale; which rules and orders, when approved by the inhabitants of said town, in legal town-meeting assembled, shall be and become by-laws of said town, and shall be binding upon all persons whomsoever." The powers thus conferred on the selectmen have been transmitted by the city charters after Salem became a city, and the agreed facts state that from time to time ordinances relating to the market house and market have

been passed. St. 1836, c. 42. St. 1912, c. 559. *Cashman* v. *City Clerk of Salem,* 213 Mass. 153, 159.

The necessity of providing for some system of regulation and control of the market, affording protection to the public of the quality of food sold as well as giving an equal opportunity to vendors desiring to stand in the market, is amply shown by the record, and under these statutes there can be no doubt of the authority of the city council to pass ordinances for this purpose requiring a license and the payment of a license fee by those who desire to avail themselves of the privilege. *Commonwealth* v. *Fox,* 218 Mass. 498, 500. *Commonwealth* v. *Maletsky,* 203 Mass. 241. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 381, 382. It has often been decided that the power to regulate may include the requirement of taking out a license and the payment of a license fee. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 382, and cases cited. By § 3 of the ordinance the board of control of the market house under the direction of the city council "shall have charge of all carts, wagons, sleighs and other vehicles or carriages within the limits of the market, and may assign stands within said limits, for the sale of provisions and other articles. No person shall occupy any other stand than the one so assigned, nor keep any cart, wagon, sleigh or other vehicle or carriage, or horse or other beast, within said limits, for any longer space of time, or shall range or locate them in any other manner or form, than the board of control shall direct. Such board of control may subject to the direction of the city council from time to time fix such sums as they may think proper as compensation for permission to stand in the market as aforesaid and shall issue permits to all persons so authorized." And by § 4, "No person shall expose for sale or sell fruit, provisions, fish, meats, vegetables, nuts, patented articles of any kind in or from any cart, wagon, or other vehicles within the limits of the market without a permit therefor from the said board of control." It is stated in the agreed facts that "the board of control, subject to the direction of the city council, has established and fixed the sum of $50 per year as compensation to stand in the market for the purpose of selling commodities" which rate has been enforced since the adoption of the ordinance. The board of control is a body not named in the charter, and without legislative authority the city council could not delegate this power.

*Commonwealth* v. *Plaisted*, 148 Mass. 375. *Lowell* v. *Archambault*, 189 Mass. 70, 73. It is, however, to be assumed, in the absence of any contention of the defendant to the contrary, that after establishing the rate, their action was approved by the city council. It follows, from what has been said, that the question of law reserved by the report "whether the city of Salem could require a permit and the payment of a fee therefor before one could occupy a stand in the market" must be answered in the affirmative.

We express no opinion on the sections relating to the rental of stalls and cellars in the market house or the management of the fish market.

The defendant lastly urges that in common with other market men he had acquired a prescriptive right to stand in the market without payment of a license fee. It is true that, before the ordinance in question, for "nearly one hundred years the premises have been used for a public market place and without charge to the public." But it also is stated, that during this period ordinances have been passed "relative to the market house and the market" which presumably have been enforced and no uninterrupted adverse user has been shown depriving the city of property or the control of property held for the benefit of the public. *Attorney General* v. *Revere Copper Co.* 152 Mass. 444.

The entry must be judgment on the verdict.

*So ordered.*