ANDREW C. NELSEN ET AL., PLAINTIFFS, V. A. C. TILLEY, DEFENDANT.

289 N. W. 388

FILED DECEMBER 20, 1939. No. 30716.

328

*Kelso A. Morgan, Joseph B. Fradenburg* and *Alfred A. Fiedler,* for plaintiffs.

*Walter R. Johnson, Attorney General,* and *Philip M. Klutznick,* for defendant.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is an original action seeking a declaratory judgment interpreting a statute regulating and licensing the sale of motor vehicles, Comp. St. Supp. 1937, secs. 60-901 to 60-919, inclusive.

The evidence shows that the A. C. Nelsen Auto Sales, a corporation, has a motor vehicle dealer's license authorizing it to sell new Nash automobiles, and that it has no license to sell other makes of new cars. It is stipulated that A. C. Nelsen Auto Sales has purchased and sold new automobiles other than those manufactured by Nash, and unless it be violative of this act to do so, it intends to continue to buy and sell new automobiles of all makes, using a dealer's license for the sale of new Nash cars only. It is also stipulated that the Central Credit Corporation does not directly deal in automobiles, but that it does make loans secured by chattel mortgages on new and used cars, and that it is often necessary to repossess both new and used automobiles when defaults occur. The Central Credit Corporation also alleges that a part of its business is to purchase new cars at chattel mortgage, bankrupt and execution sales for the purposes of resale. It is stipulated that Central Credit Corporation has no dealer's license to sell new cars, and that it cannot obtain one under the statute in question. The plaintiff A. C. Nelsen is the owner of all the stock of the Central Credit Corporation and A. C. Nelsen Auto Sales, except qualifying shares, and has an automobile salesman's license issued under the questioned statute.

It is stipulated for the purposes of this suit that the A. C. Nelsen Auto Sales and the Central Credit Corporation sometimes wilfully discriminate, either directly or indirectly, in prices between different purchasers of automobiles of like grade and quality, where the effect thereof may be substantially to lessen competition, or tend to create a monopoly, or to injure or destroy the business of a competitor. It is also stipulated that the plaintiffs are wilfully discriminating in favor of one purchaser and against others by contracting to furnish or furnishing service or facilities, or allowing discounts or rebates upon terms not accorded to all purchasers. It is also stipulated that plaintiffs are wilfully and habitually making excessive trade-in allowances on used motor vehicles for the purpose of lessening competition or destroying a competitor's business. In addition to the request of the plaintiffs for an interpretation of the statute to determine its exact meaning, plaintiffs contend that certain parts of the act contravene the Fifth and Fourteenth Amendments to the Constitution of the United States, and sections 1, 16, 21 and 25, art. I, and section 1, art. II of the Constitution of Nebraska. The decision will be limited, therefore, to a consideration of the business practices indulged in by plaintiffs and the relation of such practices to the statute before us, including the claims of unconstitutionality.

The plaintiffs contend that the regulation of the motor vehicle industry serves no public purpose; that such regulation does not promote the health, safety, morals or general welfare of the public, and consequently is inimical to the due process clauses of the state and federal Constitutions. Plaintiffs also contend that it is an unlawful interference with their right to contract, and amounts to a discrimination in respect to ownership and enjoyment of property contrary to constitutional inhibitions.

Whether these questions are to be determined as being within the prohibitions of the state and federal Constitutions. or within the broad field of legislative action known as the police power, presents a question that has brought much confusion into the jurisprudence of this country.

Liberty of contract and the right to use one's property as one wills are fundamental constitutional guarantees, but the degree of such guarantees must be determined in the light of social and economic conditions existing at the time the guaranty is proposed to be exercised, rather than at the time the Constitution was approved, otherwise legislative power becomes static and helpless to regulate and adjust to new conditions constantly arising. *State v. City of St. Petersburg,* 133 Fla. 766, 183 So. 304; *Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board,* 134 Fla. 1, 183 So. 759. The balance between due process and the police power is therefore more or less unstable, as it must necessarily keep pace with the economic and social orders. As the exercise of the police power increases to meet new conditions, the protection of the due process clauses must necessarily recede to a corresponding degree. A proper consideration of the act requires us, therefore, to construe it in the light of the later decisions, rather than the earlier ones which were controlled by circumstances and conditions playing no part in the case now before us.

It is clear that the state cannot prohibit the ordinary business of buying and selling new or used motor vehicles. It may, however, regulate a business to promote the health, safety, morals or general welfare of the public. It may also regulate a business, however honest in itself, if it may become a medium of fraud. The state may, to some extent, compel honesty by imposing a license fee, if widespread frauds upon and losses by its people are thereby prevented. The liberty guaranteed to us by the Constitution implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. *Chicago, B. & Q. R. Co. v. McGuire,* 219 U. S. 549, 55 L. Ed. 328, 31 S. Ct. 259.

It is the contention of plaintiffs that there is no basis that warrants the regulation of the sale of new and used motor vehicles in this state. It cannot be seriously disputed that the motor vehicle industry has grown to huge proportions in both the state and nation. Motor vehicles, once

luxuries, are now necessities. The handling of motor vehicles has become a complex business. The sale of new automobiles is closely tied in with the purchase, trade and sale of used cars. The possibilities of fraud upon the public have correspondingly increased. The elimination of harmful trade practices and dishonest dealings resulting in injury to the purchasing public may have been, and undoubtedly was, a factor in the passage of the act. Many courts have sustained similar legislative enactments. The "Blue Sky Laws" of Ohio and other states, which require dealers in corporate stocks and other securities to be licensed, have been held constitutional. *Hall v. Geiger-Jones Co.,* 242 U. S. 539, 61 L. Ed. 480, 37 S. Ct. 217. Licenses may be required for the operators of employment agencies. *Brazee v. Michigan,* 241 U. S. 340, 60 L. Ed. 1034, 36 S. Ct. 561. The business of selling patent rights, being peculiarly one in which fraud may be practiced, may be regulated. *Allen v. Riley,* 203 U. S. 347, 51 L. Ed. 216, 27 S. Ct. 95. A commission merchant's business has been held subject to regulation. *State v. Mohler,* 98 Kan. 465, 158 Pac. 408. Creameries may be licensed to insure honest dealing in weighing and testing the produce purchased. *Cofman v. Custerhous,* 40 N. Dak. 390, 168 N. W. 826. Wholesale produce dealers have been held subject to regulation. *State v. Levitan,* 190 Wis. 646, 210 N. W. 111; *State v. Wagener,* 77 Minn. 483, 80 N. W. 633; *Payne v. State of Kansas,* 248 U. S. 112, 63 L. Ed. 153, 39 S. Ct. 32. Sellers of bread may be regulated to protect purchasers from imposition by the sale of short-weight loaves. *Petersen Baking Co. v. Bryan,* 290 U. S. 570, 78 L. Ed. 505, 54 S. Ct. 277; *Id.,* 124 Neb. 464, 247 N. W. 39. Whatever the personal views of this court may be as to the necessity of such legislation, the fact remains that the legislature of the state concluded that a reasonable basis existed for its enactment and, there being some foundation in fact to justify legislative action, this court is powerless to substitute its judgment for that of the legislature even if it cared to do so. *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549, 66 N. W. 624. We conclude that the

legislature has the authority under the police power to regulate the purchase and sale of motor vehicles for the protection and general welfare of the public.

But the legislature, under the guise of regulation, may not indulge in arbitrary price fixing, the destruction of lawful competition, or the creation of trade restraints tending to establish a monopoly. It is contended that subdivision (a) of section 60-906, Comp. St. Supp. 1937, tends toward the creation of a monopoly. It is as follows: "Motor Vehicle Dealer's License: This license shall permit the licensee to engage in the business of selling or exchanging new and used motor vehicles or both; Provided, such license as it pertains to the sale or exchange of new motor vehicles shall be limited to such new motor vehicles as the licensee discloses in his application he is enfranchised to sell. This form of license shall permit one person named thereon to act as a motor vehicle salesman."

Plaintiffs argue that the limitation of a license to sell or exchange new motor vehicles to those which the applicant is enfranchised to sell creates a monopoly in those persons enfranchised by the manufacturers to sell new automobiles. The sale of new motor vehicles is a lawful business which any person has the right to pursue, subject to reasonable legislative regulation. No person, who complies with such reasonable regulations as the legislature may prescribe, may be arbitrarily deprived of that right. We agree that the limitation contained in subdivision (a) creates a monopoly in the persons enfranchised by the manufacturers of motor vehicles and thereby contravenes the Fourteenth Amendment to the Constitution of the United States, and sections 1, 3, 16 and 25, art. I of the Constitution of Nebraska. We base our holding in part on the case of *Hall v. State,* 100 Neb. 84, 158 N. W. 362, wherein this court said that an attempt on the part of the legislature to limit the sale of anti-hog cholera serum to persons holding a United States government veterinary license is a restriction upon the right of a person to adopt and follow a lawful industrial pursuit, it appearing that such government licenses were

issued only to the manufacturers of the serum. Also, in *State v. Geest,* 118 Neb. 562, 225 N. W. 709, this court said in a case similar in principle: "A law which restricts to registered pharmacists the sale of such articles as salt, soda, soap, distilled water, corn starch, and other useful but harmless articles, does not tend to promote the public health or welfare, but tends to place in the hands of a limited class a monopoly of the sale of such articles. Such an act is beyond the scope of the police power and is invalid." In the instant case, the issuance of a license to sell new cars is limited to those enfranchised by the manufacturer of the new motor vehicles to be sold. The effect would be that the business of selling new cars would be monopolized by dealers enfranchised by the manufacturers. It constitutes an attempt to create a monopoly, a power that the legislature does not possess. The legislature cannot prohibit a citizen from engaging in the lawful business of selling and exchanging new motor vehicles by licensing the business and limiting the issuance of licenses to a favored few. We therefore hold that the limitation contained in subdivision (a) of section 60-906, Comp. St. Supp. 1937, is unconstitutional and wholly void.

In the light of the foregoing holding, any person desiring to engage in the purchase and sale of new automobiles is entitled to a license upon payment of the fee and a compliance with the valid requirements of the act. This removes from our consideration the rights of the plaintiffs to sell new cars under the act before us, as each would be entitled to obtain a license to sell new cars without a limitation as to make. The defendant contends that the act contains no restraints tending to create monopoly for the reason that a manufacturer engaged in private business may lawfully announce in advance the retail prices at which his goods may be resold and refuse to deal with persons who do not conform to such prices. We concede for the purposes of this suit that the foregoing is a correct statement of the law, but it has no application here. A person may do business with whomsoever he desires and he may likewise

refuse business relations with any person if he sees fit. *Hompes v. B. F. Goodrich Co., ante,* p. 84, 288 N. W. 367. But the fact that manufacturers may lawfully contract with such persons with whom they choose to deal can add nothing to the power of the legislature if its enactments clash with restraints imposed upon it by the Constitution.

Plaintiffs contend that subdivision (f) of section 60-912 of the act, providing that the administrator shall have power to deny an application or revoke a license upon proof of unfitness of the applicant or licensee, is unconstitutional for the reason that it confers arbitrary power upon the administrator. We think this point has been decided contrary to the contentions of plaintiffs by a former decision of this court. We have held that a statute providing that the secretary of state shall have the power to reject any application for a license to lend money after a hearing does not confer arbitrary power upon the secretary of state. *Althaus v. State,* 99 Neb. 465, 156 N. W. 1038. In the instant case, a simple method of appeal to the district court is provided in which the licensee, by giving a one hundred dollar bond, may supersede the order of the administrator denying his application or revoking his license. Comp. St. Supp. 1937, sec. 60-916. Adequate protection against the exercise of arbitrary power is thereby provided. The situation respecting the ascertainment of qualifications as to fitness and suitability by an administrative officer under legislative direction is aptly stated in *Kreutzer v. Westfahl,* 187 Wis. 463, 204 N. W. 595, as follows: "The statutory directions for ascertaining the qualifications and fitness of the applicants for permits are not so explicit, and the argument is made that there is no standard for their selection and that in this respect the statute attempted to confer arbitrary power on the commission. The applicant is required to furnish a written statement showing his previous business history and such other facts as may be required. The commission, if it is deemed advisable, may make a detailed examination of his business and conduct, and if satisfied as to his good business reputation and conduct it is

required to issue the permit. It cannot be doubted that the legislature has the power to determine the qualifications of persons engaging in a business which from its nature affords opportunities for defrauding the public. In this statute it has declared what these qualifications shall be. The legislature might have added language prescribing in great detail the qualifications of applicants for permits and the mode of ascertaining those qualifications, but it is a question whether such details would not have tended to confuse rather than enlighten."

To the same effect is *Highland Farms Dairy v. Agnew*, 300 U. S. 608, 81 L. Ed. 835, 57 S. Ct. 549, in which the court said: "The statute is not invalid for failing to prescribe the standards to be applied by the commission in granting licenses or refusing them. The obvious purpose of the license is to provide the commission and the members of the local boards with a record of the distributors and producers subject to the act. Supervision and enforcement are thus likely to be easier. No inference is permissible that any one was intended to be excluded because of favor or caprice. * * * Indeed the statute makes provision * * * that an order refusing to issue a license, or suspending or revoking one, may be reviewed on appeal to the Supreme Court of Appeals. There is sedulous protection against oppression or abuse of power. One who is required to take out a license will not be heard to complain, in advance of application, that there is danger of refusal. * * * He should apply and see what happens." We conclude therefore that subdivision (f) is not void for failure to provide more definite standards for determining qualifications as to fitness. The statute adequately protects against the exercise of arbitrary power by the administrator of the act. The subdivision in question, when considered with other parts of the statute, conforms with constitutional requirements.

Plaintiffs contend that three other subdivisions of section 60-912 of the act violate constitutional provisions; and because of their similarity in principle, they will be con-

sidered together in this opinion. The subdivisions in question provide that the administrator may deny or revoke a license on proof that the applicant or licensee is (i) wilfully discriminating, either directly or indirectly, in price between different purchasers of a commodity of like grade or quality where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly or to injure or destroy the business of a competitor, (j) wilfully discriminating in favor of one purchaser of a motor vehicle by furnishing or contracting to furnish services or facilities or allowing discounts or rebates in connection with the sale or offering for sale of such motor vehicles so purchased upon terms not accorded all purchasers on proportionately equal terms, and (k) wilfully and habitually making excessive trade-in allowances on used motor vehicles for the purpose of lessening competition or destroying a competitor's business.

This court is committed to the doctrine that constitutional guaranties "contemplate that every person legally possesses the right of acquiring the absolute and unqualified title to every species of property recognized by law, with all rights incidental thereto, and, in connection with the right of personal liberty, it includes the right to dispose of such property in such innocent manner as he pleases, and to sell it at such price as he can obtain in fair barter." *State v. Ruback,* 135 Neb. 335, 281 N. W. 607. A person has the right to adopt and follow any lawful business pursuit, not injurious to the community, which he may see fit, without being subjected to arbitrary restraints. Incidental to this, he has the right to labor or employ labor, make contracts in respect thereto upon such terms as the parties may agree, and to purchase, sell, inherit, sell and convey property of all kinds. Under the guise of regulation, these rights may not be arbitrarily abridged. *State v. Sperry & Hutchinson Co.,* 94 Neb. 785, 144 N. W. 795; *Hall v. State,* 100 Neb. 84, 158 N. W. 362.

It will be noted therefore that in subdivisions (i) and (k) the prohibited acts are unlawful only where the effect of

such discrimination may be substantially to lessen competition or tend to create a monopoly or to injure or destroy the business of a competitor. The act itself is not prohibited; it is the act accompanied by an intent to accomplish a result made unlawful by the statute which the legislature attempted to correct. Injuries sustained as a result of fair competition are not protected against by either the state or federal Constitutions. It is only when the act is accompanied by a wrongful intent, established by sufficient and competent evidence, to lessen competition, to establish a monopoly, or to injure or destroy the business of another that the penalty provided by the statute can be imposed. Properly interpreted, the subdivisions in question provide for reasonable regulations, and do not constitute the exercise of arbitrary powers or an interference with the rights of property or personal liberty guaranteed to us by the state and federal Constitutions.

As to subdivision (j), the element of intent is lacking. The prohibition is against wilful discrimination in favor of one purchaser against another in the respects noted therein, without reference to the intent or motive of the person so doing. It is in effect a price fixing statute. It is violative of the holdings heretofore cited and of the constitutional prohibitions hereinbefore referred to. Certainly, a person may sell his property for any price he cares to sell it for, unless it be accompanied by an intent to accomplish a purpose that is unlawful. If the statute purports to prohibit every wilful discrimination in price, every agreement to furnish services, every allowance of a discount or rebate, and every sale of a motor vehicle at other than a fixed standard price, it conflicts with constitutional restraints imposed on the legislature with reference to the acquisition, ownership and enjoyment of property, and the guaranty that no person shall be deprived of life, liberty or property without due process of law. If any of such acts were not intended to be inhibited by the statute, the case then falls squarely within our holding in *State v. Ruback, supra,* wherein we said: "The test to determine whether a statute

defining an offense is void for uncertainty (1) is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences, thereby devolving on the court the exercise of arbitrary power of discriminating between the several classes of acts. * * * It is obvious that the terms of the statute under consideration are indefinite and uncertain. The elements of the crime it attempts to define and punish are not so clearly expressed that the ordinary person is apprised in advance as to what course it is lawful for him to pursue, and the intent and purpose of the sovereign is not clearly declared." We are therefore obliged to hold that subdivision (j) of section 60-912 of the act is invalid and of no force and effect.

Plaintiffs contend that the survey provisions of the act, section 60-913, Comp. St. Supp. 1937, are unconstitutional and void because they result in price fixing by the exercise of arbitrary power on the part of the administrator of the act. The section under consideration provides: "For the purpose of determining whether or not an applicant for a license or a holder of a license has violated any of the provisions of this law with particular regard to price discrimination and excess allowances on used motor vehicles, the administrator may authorize or at the request of 40% of the licensed motor vehicle dealers in any county or section larger than a county of this state, shall authorize a survey to be made to determine a fair basis for allowances to be made for used cars in purchases thereof or exchanges for other new or used cars. Such survey, if made, shall be amended from time to time as market conditions change and copies of the survey and amendments thereto shall be made available to all licensed dealers and salesmen. Said survey shall serve as a guide and shall in no way be binding upon any licensed dealer or salesman except for the purposes stated hereinbefore in this Act."

We quite agree that, in construing an act of the legislature, all reasonable doubt must be resolved in favor of

constitutionality. Likewise, it has been held that, if a statute is subject to more than one construction, one of which would make the act constitutional and the other unconstitutional, this court is required to adopt the former. *Hinman v. Temple,* 133 Neb. 268, 274 N. W. 605; *Abie State Bank v. Weaver,* 119 Neb. 153, 227 N. W. 922.

It will be noted that the survey provision provides that the administrator shall authorize a survey to be made to determine a fair basis for allowances to be made for used cars in purchases thereof or exchanges for other new or used cars. It is to be used by the administrator to determine whether price discriminations exist. The completed survey is advisory only to the administrator. No provision for its admission as evidence is made. It is not even made *prima facie* evidence of the market price of used automobiles. All the other elements of the offense must be established, including the fact that the discrimination was unlawful. It is true that copies of the survey are to be made available to all licensed dealers to be used as a guide in their business transactions. Dealers are not required by the act to comply with the prices fixed in the survey. This being true, it is not a price fixing statute, nor one authorizing the use of arbitrary power by the administrator of the act. It is merely a statutory means which the administrator shall use in judging whether there have been price discriminations, either lawful or unlawful. Construed as a guide in the determination of price discriminations in carrying on a business decreed by the legislature as subject to regulation, the survey provision must be said to be regulatory in character. *City of Newman v. Atlanta Laundries, Inc.,* 174 Ga. 99, 162 S. E. 497.

Plaintiffs contend that section 60-908 of the act, providing for the collection of license fees, is unconstitutional and void. We think the law is that power to regulate includes authority to license, and authority to license includes authority to collect a reasonable license fee. *Commonwealth v. Clay,* 224 Mass. 271, 112 N. E. 867; *Opinion of the Justices,* 250 Mass. 591, 148 N. E. 889; *Paramount Pictures Dis-*

*tributing Co. v. Henneford,* 184 Wash. 376, 51 Pac. (2d) 385.

The question arises whether the parts of the act found herein to be invalid are sufficient to vitiate the whole act. The act itself provides that, if any section, sentence, clause, phrase or requirement of this act is held unconstitutional, such decision shall not affect the validity of the remaining portions thereof. This evidences an intent on the part of the legislature to have the valid parts of the statute in force if some be declared unconstitutional. The applicable rule is:
"If a portion of a legislative act is unconstitutional and it can be separated from other portions of the act and the latter enforced independent of the former, and it further appears that the unconstitutional part did not constitute such an inducement to the passage of the other parts of the law that they would not have been passed without it, the former may be rejected and the latter upheld." *State v. Stuht,* 52 Neb. 209, 71 N. W. 941. Also, *State v. Price,* 129 Neb. 433, 261 N. W. 894; *Laverty v. Cochran,* 132 Neb. 118, 271 N. W. 354; *State v. Howard,* 96 Neb. 278, 147 N. W. 689.

In our opinion, a workable plan remains after the invalid portions are stricken out. An invalid proviso relating to the licensing of the sale of new motor vehicles has been herein nullified. Also, one cause for the denial of an application for a license or the revocation of an existing license, as the case may be, has been invalidated. Can it be said that these two sections of the act were such an inducement to its passage that it would not have been enacted if they had not been included? We think not. See *Weller v. New York,* 268 U. S. 319, 69 L. Ed. 978, 45 S. Ct. 556; *Highland Farms Dairy v. Agnew,* 300 U. S. 608, 81 L. Ed. 835, 57 S. Ct. 549. We think the saving clause contained in the act, together with the nature of the invalid parts that have been nullified and the relation they bore to the remaining portions of the act, are such as to permit the remaining valid parts of the statute to remain in full force and effect.

We conclude that plaintiffs' allegations of unconstitu-

342

tionality as shown in the pleadings are without merit, except as otherwise declared in this opinion.

JUDGMENT ACCORDINGLY.