OHIO MOTOR VEHICLE DEALERS' & SALESMEN'S LICENSING BOARD, APPELLANT, v. MEMPHIS AUTO SALES, APPELLEE.

(No. 24036—Decided May 8, 1957.)

*Mr. William Saxbe,* attorney general, *Mr. Hugh E. Kirkwood* and *Mr. C. V. Thomas,* for appellant.
*Messrs. Terrell, Williams & Salim,* for appellee.

HURD, J.   These proceedings originated before the Ohio Motor Vehicles Dealers' and Salesmen's Licensing Board, hereinafter referred to as the board, when the Memphis Auto Sales,

a dealer licensed to sell International trucks and used cars, hereinafter referred to as the dealer, was charged on three counts with violating the Ohio Auto Dealers' and Salesmen's Licensing Act. The dealer was cited to appear before the board on November 21, 1955, for a hearing on the charges. Upon hearing, the board made a finding that the dealer had violated the Act and imposed an order of suspension from business of 30 days to run consecutively as to each of the three counts.

Thereupon, the dealer appealed to the Court of Common Pleas where the order of suspension of 30 days was affirmed as to one count and reversed as to two counts and the orders of suspension in respect thereto set aside.

The case now comes to this court, appealed on questions of law both by the dealer and by the board. We shall discuss the separate issues raised as to each count.

The most important question raised involves count No. 3, because it relates to the constitutionality of Rule No. 9 of the board promulgated under subsection (D) of Section 4517.06 of the Revised Code. As to this count, the dealer was cited to appear before the board to determine whether it had violated Rule No. 9 of the board in the following respect:

"That you are displaying for sale 1955 Ford cars, with the Manufacturer's Statements of Origin, without having a franchise from said manufacturer."

By decision dated January 15, 1956, the board found that the dealer had so violated Rule No. 9, and it was the opinion of the board:

"That the displaying for sale of 1955 Ford cars, with Manufacturer's Statement of Origin, without having a franchise from the said manufacturer by the Memphis Auto Sales was in violation of the Dealers' and Salesmen's Licensing Act of Ohio. Sections 4517.02, 4517.06 and 4517.18, Revised Code of Ohio."

As a result of its finding, the board ordered that the dealer's license be suspended for a period of 30 days. The Court of Common Pleas held this order to be invalid, the basis of the decision being that the statute under which the rule was promulgated was unconstitutional.

Section 4517.02, Revised Code, provides that no person

other than a salesman or dealer licensed according to Sections 4517.01 to 4517.18, inclusive, shall engage in the business of selling motor vehicles at retail.

Section 4517.06, Revised Code, provides that an application of any person for a license as a motor vehicle dealer shall be refused or denied if the applicant:

"(D) Is engaged or will engage in the business of selling at retail any new motor vehicles without having authority of a contract with a manufacturer or distributor thereof."

Section 4517.18, Revised Code, merely recites that no person shall engage in the business of selling, displaying, etc., for sale at retail any motor vehicles without having a license as required by Sections 4517.01 to 4517.18, inclusive, of the Revised Code.

Under Section 4517.12 of the Revised Code, the board has the power to make rules and regulations and the power to suspend or revoke a license if any ground is found to exist upon which such license might have been initially denied or refused. In order to clarify what was a "new motor vehicle" within the purview of subsection (D) of Section 4517.06, Revised Code, the board adopted Rule No. 9 which provided that any dealer which has a manufacturer's statement of origin for a car is selling a new car. The dealer did not have a contract with a manufacturer or distributor of Ford cars and consequently did not have a manufacturer's statement of origin for the 1955 Ford cars that it displayed for sale.

The question presented, therefore, is whether subsection (D) of Section 4517.06 and Rule No. 9, adopted thereunder, contravene any provision of our state or federal Constitutions. This appears to be, insofar as it relates to the section in question, a case of first impression in this state. However, the question has been decided in other jurisdictions.

In the case of *Nelsen* v. *Tilley*, 137 Neb., 327, 289 N. W., 388, 126 A. L. R., 729, the court held, as appears by paragraph seven of the syllabus:

"7. Constitutional Law. A provision in a regulatory statute limiting the issuance of a motor vehicle dealer's license for the sale of new cars to persons enfranchised by the manufacturers of new motor vehicles is an unlawful restriction upon

the right of a person to adopt and follow a lawful industrial pursuit.''

In that case, an original action for a declaratory judgment was instituted in the Supreme Court of Nebraska by the A. C. Nelsen Auto Sales which had a dealer's license which authorized it to sell new Nash automobiles. It did not have a license to sell any other make of car. However, it had purchased and sold new automobiles other than those manufactured by Nash, and, unless it violated subdivision (a) of Section 60-906, Comp. St. Supp. 1937, it intended to continue to do so. Central Credit Corporation, owned by A. C. Nelsen Auto Sales, was also a party plaintiff to the suit. Central did not deal directly in automobiles but made loans secured by chattel mortgages on new and used cars and repossessed the cars when there was a default. It also purchased new cars at chattel mortgage, bankrupt and execution sales for the purpose of resale. Central had no license to sell new cars. The suit was instituted for the purpose of determining whether Nelsen and Central could continue to sell new automobiles in contravention of subdivision (a) of Section 60-906. That section provided in part:

''Motor Vehicle Dealer's License: This license shall permit the licensee to engage in the business of selling or exchanging new and used motor vehicles or both; Provided, such license as it pertains to the sale or exchange of new motor vehicles shall be limited to such new motor vehicles as the licensee discloses in his application he is enfranchised to sell * * *.''

In the course of its opinion, the court said that while it was clear that the state cannot prohibit the ordinary business of buying and selling new or used automobiles, it may regulate a business to promote the health, safety, morals or general welfare of the public. It may also regulate a business, however honest in itself, if it may become a medium of fraud, and a state may, to some extent, compel honesty by imposing a license fee if widespread frauds upon and losses by its people are thereby prevented. The liberty guaranteed to us by the Constitution implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. *Chicago, B. & Q. R. Co.* v. *McGuire*, 219 U. S., 549, 55 L. Ed., 328, 31 S. Ct., 259. The court then noted

the huge growth of the motor vehicle industry; that motor vehicles were no longer luxuries but necessities; the growing complexity of the business and the consequent possibility that fraud had thereby been correspondingly increased; and that the elimination of harmful trade practices and dishonest dealings resulting in injury to the purchasing public may have been, and undoubtedly was, a factor in passage of the act. The court then cited the similar legislative enactments which had been sustained, including the "Blue Sky Laws" of Ohio and other states, which require dealers in corporate stocks and other securities to be licensed.

The court continued by saying that whatever its personal view might be as to the necessity of such legislation, the fact remained that the Legislature of the state concluded that a reasonable basis existed for its enactment, and, there being some foundation in fact to justify legislative action, it was powerless to substitute its judgment for that of the Legislature even if it cared to do so. The court concluded that the Legislature had the authority under the police power to regulate the purchase and sale of motor vehicles for the protection and general welfare of the public.

However, the court said, the Legislature may not, under the guise of regulation, indulge in the destruction of lawful competition, or the creation of trade restraints tending to establish a monopoly. The opinion of the court then set forth plaintiff's contention that the limitation of a license to sell or exchange new motor vehicles to those which the applicant is enfranchised to sell creates a monopoly in those persons enfranchised by the manufacturers to sell new automobiles; that the sale of new motor vehicles is a lawful business which any person has the right to pursue, subject to such reasonable regulations as the Legislature may prescribe; and that no person who complies with such reasonable regulations may be arbitrarily deprived of that right. The court then went on to say that it agreed that the limitation contained in subdivision (a) created a monopoly in the persons enfranchised by the manufacturers of motor vehicles and thereby contravened the Fourteenth Amendment to the Constitution of the United States and the Constitution of Nebraska.

The court based its holding in part on the case of *Hall* v. *State*, 100 Neb., 84, 158 N. W., 362, L. R. A. 1916F, 136, wherein the court said that an attempt on the part of the Legislature to limit the sale of anti-cholera serum to persons holding a United States government veterinary license is a restriction upon the right of a person to adopt and follow a lawful industrial pursuit, it appearing that such government licenses were issued only to the manufacturers of the serum. Also, in *State* v. *Geest*, 118 Neb., 562, 225 N. W., 709, the court said in a case similar in principle:

"A law which restricts to registered pharmacists the sale of such articles as salt, soda, soap, distilled water, corn starch, and other useful but harmless articles, does not tend to promote the public health or welfare, but tends to place in the hands of a limited class a monopoly of the sale of such articles. Such an act is beyond the scope of the police power and is invalid."

The court, in the *Nelsen case*, then said that the issuance of a license to sell new cars is limited to those enfranchised by the manufacturer of the new motor vehicles to be sold. If this were held to be permissible by the court, then the business of selling new cars would be monopolized by dealers enfranchised by the manufacturers. The court continued by saying that the statute in question constituted an attempt to create a monopoly, a power that the Legislature does not possess. It also stated that the Legislature cannot prohibit a citizen from engaging in the lawful business of selling motor vehicles by licensing the business and limiting the issuance of licenses to a favored few. The court concluded that the limitation contained in subdivision (a) of Section 60-906 was unconstitutional and wholly void.

In the case of *Joyner, Jr., Commr.*, v. *Centre Motor Co., Inc.*, 192 Va., 627, 66 S. E. (2d), 469, the litigation arose out of the refusal of the Commissioner of the Division of Motor Vehicles of Virginia to issue to the Centre Motor Co., Inc., a license that would permit it to sell new motor vehicles. Centre did not hold a contract or franchise with any manufacturer, distributor, or dealer authorizing it to sell new motor vehicles. In that case a provision of the Virginia Code (Section 46-522), similar to that in the *Nelsen case* and in the instant case, was

under attack. It provided that a license could be denied, suspended or revoked on the following grounds:

"(4) Being a new motor vehicle dealer, engaging in the business of selling at retail any new motor vehicle without having authority of a written contract or franchise with the manufacturer or authorized distributor of that particular make of new motor vehicle. * * *".

The Virginia court relied upon and quoted extensively from the *Nelsen case, supra*. However, as far as the constitutionality of the section was concerned, the court confined itself to the following constitutional provision (Section 63, Clause 18 of Article IV of the Virginia Constitution):

"The General Assembly shall not enact any local, special or private law in the following cases:

"* * *

"18. Granting to any private corporation, association, or individual any special or exclusive right, privilege or immunity."

After discussing what is a "special law," the Virginia court concluded that the statute in question was unconstitutional in that it gave special and exclusive privileges to one set or class of dealers which it denied to others who were equally fit and capable of dealing in motor vehicles; that neither the qualifications of those who engage in selling motor vehicles, nor the evils sought to be guarded against furnished any justification for the discriminatory classification made; and that the classification made and the restrictions imposed fostered and protected the commercial interests of the enfranchised dealers, but the classification was unnatural and unreasonable and the restrictions were not in the interests of the public health, morals, safety or general welfare. At page 633 of its opinion, the court said:

"* * * Its [the statute in question] sole effect is to forbid to some the right to sell any or all new cars and by force of law grant that special right and valuable business privilege to a preferred few. And those select few are determined upon and limited to those to whom motor vehicle manufacturers, distributors or other dealers decide to award contract franchises."

Another case of similar import is *Signore* v. *Rizzolo*, 9 N. J.

Super., 539, 75 A. (2d), 757, where the court held invalid a provision of a municipal ordinance requiring a vendor of used automobiles on a vacant lot in a town to be a recognized and authorized dealer in new automobiles. The Superior Court of New Jersey, in commenting upon the ordinance which permitted new car dealers to operate a used car business on vacant lots, while prohibiting used car dealers to do so, said:

"* * * The power to regulate is ordinarily confined to such reasonable restraints upon the business made the subject thereof as may be demanded by the public interest. But it is not in the public interest to prohibit a business, lawful in itself, for the enrichment of a certain few. There are twelve authorized new car dealers in Kearny. Section 14 [the section under consideration] of the ordinance gives them a monopoly of the business of selling used cars on vacant lots. Ordinances operating to restrain competition and tending to create monopolies or confer exclusive privileges are generally condemned. * * *

"* * * *

"* * * * The requirement that the vendor of used cars on a vacant lot be a recognized and authorized new car dealer has no relation to the public health, morals or general welfare; it imposes an arbitrary restriction upon the use of land and constitutes an unreasonable interference with the ownership of private property and the conduct of business."

We have thus discussed these cases *in extenso* because (1) the statutes there considered are similar in all essential respects to the Ohio statute, (2) because of the soundness of the reasoning and logic therein expressed, and (3) because, though the decisions are not binding upon this court, the force thereof is highly persuasive as applied to the issue here involved.

An interesting observation concerning these cases is found in a discussion contained in 38 Virginia Law Review (1952), 127, where it is said:

"By restricting the sale of new automobiles to enfranchised dealers, the Legislature sought to curb the practice of dressing-up used automobiles and passing them off as new. While the purpose of such legislation was praiseworthy, the method selected was unfortunate. As the court points out, such fraudulent practices are not confined to used car dealers, but are

equally accessible to new car dealers who accept trade-ins. Since the effect of this legislation was not to eliminate fraud, but rather to make fraud the exclusive privilege of enfranchised dealers, the court was justified in holding this classification unreasonable."

In the instant case, the trial judge, in concluding that subsection (D) of Section 4517.06, Revised Code, and Rule No. 9 adopted thereunder, were unconstitutional and, therefore, invalid, quoted extensively from 10 Ohio Jurisprudence (2d), 434, 442, 506, 507, 528, Sections 360, 366, 429, 431 and 454, concerning the limitation on constitutional provisions and then cited the *Nelsen* and *Joyner cases, supra,* in support of his views. We agree with the trial judge that "the gist of this statute is to implement the terms of the franchise and to police the franchise for the manufacturers. This is done under the guise of public good. The selling of new cars may be regulated; the public may be protected from fraud; but to provide that only those individuals whom a manufacturer may choose, and on such terms as he may choose, can sell new cars is discriminatory, and certainly has no connection with the general welfare of the public."

While the precise question here presented has not been decided in Ohio, still there are authoritative decisions of several Ohio cases which do support the reasoning, spirit and general tenor of the cases heretofore discussed.

Thus, in *City of Cincinnati* v. *Cook,* 107 Ohio St., 223, 140 N. E., 655, a city ordinance which made it unlawful for any driver or operator of any vehicle to permit his vehicle to stand in front of a certain railroad passenger station between points designated "unless the permission to stand has been granted by the person having the supervision over said passenger station" was held invalid because of its attempted delegation of legislative power and for the reason that it was violative of the equal protection of the law guaranties of the state and federal Constitutions. At page 227 of its opinion, the court said:

"The effect of this ordinance is to grant a privilege or immunity to one and deny it to another of the same class. Ordinances to be valid must be general in their nature and impartial in their operation * * *."

Also, in the case of *Northern Boiler Co.* v. *David,* 157 Ohio St., 564, 106 N. E. (2d), 620, a case arising in this jurisdiction, the Supreme Court affirmed the judgment of this court when we held invalid an ordinance of the city of Cleveland which provided that "except as to residential property no permit shall be granted by the director of public service to cut the curb * * * unless and until written notice * * * has been given to the member of council from such ward" and "if * * * such member of council shall notify said director in writing of his objection to the issuance of such permit, such permit shall not be issued except pursuant to resolution of council." Our Supreme Court held that this constituted a delegation of legislative power and was unconstitutional and void. Commencing at page 569, the court said:

"It is to be noted that this ordinance is negative in character in that it denies to the administrative officer the unqualified power to grant an application of one having other than residential property to construct a driveway into the street. The granting of the permit by the director of public service is conditioned on the approval by the member of the city council elected from the ward wherein the property is situated. Clearly the action of such councilman in no manner represents a legislative act by council. In such matter he is acting as an individual and as an individual he is not vested with any governmental authority of either a legislative or an administrative character."

We think the case at bar is even more emphatic because private automobile manufacturers from out of the state are vested with power to determine who shall sell new cars in this state.

We hold, therefore, that subsection (D) of Section 4517.06, Revised Code, including Rule No. 9, adopted thereunder, is invalid because (1) it constitutes an unlawful prohibition upon the right of a person to follow a lawful industrial pursuit; (2) it creates a monopoly by way of a special privilege in favor of the persons enfranchised by the manufacturers of motor vehicles; (3) it is not general in its nature and as such is not uniform and impartial in its operation; and (4) it is an unlawful delegation of legislative power in favor of private concerns and

manufacturers of motor vehicles who are empowered to select a favored few for enfranchisement, for all of which reasons subsection (D) of such section is invalid and violative of the Fourteenth Amendment to the Constitution of the United States and violative of the Constitution of the state of Ohio.

True the sale of motor vehicles is affected by public interest, and laws regulating their sale generally are salutary. But regulation and not prohibition is the norm or standard to be adopted. Regulation to meet the test of legality and constitutionality must be uniform in its application free from the vice of private selection discriminatory in character. This can be accomplished by adopting uniform standards of general application throughout the state—such as minimum requirements as to proper facilities and equipment and similar features.

We come now to consider count No. 2, the charge being as follows:

"That George Allen, employed by you, is engaged in the business of selling, displaying, offering for sale, or dealing in motor vehicles at retail without having a salesman's license."

The trial court found that there was not sufficient evidence before the board to warrant a conviction, and the 30-day suspension was set aside. Upon examination of the evidence contained in the record, we believe that the judgment of the Court of Common Pleas in overruling this count and setting aside the 30-day suspension should be affirmed.

We come now to a consideration of count No. 1. The trial judge sustained it. The charge on this count was as follows:

"You are hereby notified that a hearing will be conducted before the Board * * * at 1:30 P. M., November 21, 1955, to determine whether you have violated Section 4505.03, * * * of the Revised Code * * *."

The decision of the board recites the following findings of fact:

"(1) That Jack Kohl purchased a 1955 Oldsmobile on or about July 1, 1955 from the Memphis Auto Sales and received the certificate of title on August 29, 1955."

The board then concluded that by reason of the foregoing finding the selling of a 1955 Oldsmobile by the Memphis Auto Sales to Jack Kohl on July 1, 1955, and the failure to deliver a

certificate of title to him until August 29, 1955, was in violation of the Certificate of Title Law of the state of Ohio, Sections 4505.03 and 4505.06, of the Revised Code.

Section 4505.03 of the Revised Code, reads:

"No person, except as provided in Section 4505.05 of the Revised Code, shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as is necessary to show title in the purchaser; nor shall any person purchase or otherwise acquire a motor vehicle without obtaining a certificate of title for it in his name in accordance with Sections 4505.01 to 4505.19, inclusive, of the Revised Code."

It is obvious from a comparison of the notice and Section 4505.03 of the Revised Code that the Memphis Auto Sales did not violate the section under which it was charged by the notice served on it by the board. It is also obvious that the conviction was had under Section 4505.06, Revised Code, which provided that a certificate of title shall be filed within three days of the delivery of such motor vehicle. It is equally obvious that the appellant did violate this section. However, it was never so charged.

While pleadings interposed in an administrative proceeding do not require the exactitude of those filed in a judicial proceeding, it is quite certain that the board did not comply with the requirements of Section 119.07, Revised Code, a part of the Ohio Administrative Procedure Act. This section provides in part:

"* * * such notice * * * shall include the charges or other reasons for such proposed action, the law or rule directly involved * * *."

The quoted portion of Section 119.07, Revised Code, is concerned with the contents of notice of hearing when an agency is seeking to suspend a license.

Because the appellant was charged with a violation of one section of the Certificate of Motor Vehicle Title Law, and the findings of the board and order promulgated thereunder were for the violation of another section of such law, it is our opinion that the judgment of the Court of Common Pleas upholding the ruling of the board should be reversed on the ground that

the board did not comply with the procedure set forth in Section 119.07 of the Revised Code, and further for the reason that a certificate of title had been delivered to the buyer prior to the filing of the charge.

For these reasons, the judgment is affirmed as to counts Nos. 2 and 3 and is reversed and final judgment rendered for the appellant as to count No. 1.

*Judgment accordingly.*

KOVACHY, J., concurs.

SKEEL, P. J., concurring in part and dissenting in part. I concur in sustaining the errors presented on behalf of the appeal of the Memphis Auto Sales but dissent to the holding of the majority that subsection (D) of Section 4517.06, Revised Code, and Rule No. 9 thereunder, is unconstitutional.

Certainly the Legislature has the power to determine that the conduct of an agency engaged in the sale of new motor vehicles is a business affected by the public interest. This fact has been recognized by Legislatures and courts throughout the country. Having determined that fact, the board, under the authority granted by the Legislature, is clothed with authority to regulate the business in such manner as is necessary to protect the public morals, health and safety of the people.

The fact that dealers may be restricted in their activities by virtue of the failure to secure a franchise for the sale of new motor vehicles from the manufacturer is not such a circumstance as to justify a court in holding that the section and the rule adopted thereunder are unconstitutional.