SHERMAN R. RING AND JACK B. BRODY, INDIVIDUALLY AND AS PARTNERS TRADING AS R. & B. TRUCK & PARTS CO., PROSECUTORS, v. MAYOR AND COUNCIL OF THE BOROUGH OF NORTH ARLINGTON, DEFENDANT.

Argued May 6, 1947—Decided January 29, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutors, *Abraham Alboum*.

For the defendant, *Bruck & Bigel* (*Milton Bruck*, of counsel).

The opinion of the court was delivered by

HEHER, J.  The essential question here is the legal sufficiency of a local ordinance requiring a license, and the payment of an annual license fee of $250, "for each separate and distinct location where the business of engaging in the sale, purchase or exchange of used motor vehicles and parts thereof is maintained or conducted, or where used motor vehicles and parts thereof are being stored for the purpose of sale or exchange." The term "separate and distinct location" is defined to "mean any premises, which consist of a part of one or one or more lots, as set forth on the Tax Map" of the defendant borough, "and which part of lot or lots are adjacent and contiguous to each other, and if described by metes and bounds would have one continuous and uninterrupted boundary line." And it is provided that the license issued shall describe the location of the business covered thereby; and the licensee is enjoined against the operation of the business at any other location. The ordinance is a revenue and regulatory measure enacted pursuant to *R. S.* 40:52–1, 40:52–2.

Prosecutors devote these premises to the business made the subject of this legislation: (1) Land abutting on the west side of River Road, North Arlington, known as No. 269 River Road, being the southerly portion of Block 130 on the local tax map, and Nos. 271-305 River Road, being the northerly and major part of Block 130, which Block 130 fronts about 400 feet on the road and runs back an average

depth of 50 feet; (2) land fronting on the east side of the same thoroughfare, numbered 268-274, in width about 105 feet and in depth about 75 feet; (3) land on the east side of the road, numbered 304-310, approximately 100 feet by 100 feet; and (4) premises also on the east side of the road, numbered 288-292, in width 45 feet and in depth 75 feet, used as an "office and main place of business." Block 130 is directly opposite the office building on location 4. The northerly or major part of location 1 is used for the display and sale of used motor vehicles; the southerly portion thereof and locations 2 and 3 are devoted to the storage and sale of parts of used motor vehicles. All of these premises have been used "for the same business since 1924."

It is stipulated that there is no "ordinance licensing and regulating the use of premises by dealers in new motor vehicles and parts;" that premises nearby designated as Nos. 252-266 River Road, containing about 41,000 square feet of land, are devoted to the same business as that conducted by prosecutors, and the borough requires but one license and one license tax for the premises; and that from 1938 to 1945, only one license fee was exacted from prosecutors for all of its premises.

There were two earlier ordinances providing for the separate licensing of those who deal in used motor vehicles and in parts of such vehicles. The license fee for the former was fixed at $100 for each location, and for the latter at $250 for each location. This court ruled that, in the view of the statute (40:52–1, *supra*), the two constituted but one business and were subject to the licensing power only as a unit. *Ring* v. *North Arlington*, 134 *N. J. L.* 407.

The ordinance alone is before us for review. The return to the writ of *certiorari* reveals no adverse action against prosecutors which is subject to judicial examination. The writ restrained the borough from taking action against prosecutors "for any alleged violations" of the ordinance. The ordinance is challenged as arbitrary, discriminatory and unreasonable, on its face and its application to prosecutors.

The argument, in sum, is that the local legislative definition of a "licensable location" is arbitrary and unreasonable;

that prosecutors' premises are "in one closely knit area" and "constitute one business unit and location," each "location" being "only a part, adjunct or auxiliary of the whole business unit," and therefore in fact but "one licensable location," and the requirement of three license fees for as many "locations" is discriminatory and unreasonable; and that, at all events, the license fee of $250 is confiscatory, and, to conform to the standard of reasonableness, the license tax "should be based either on a graduated scale or on the amount of space used." It is said also that the noninclusion in the regulation of dealers in new motor vehicles and parts and the inclusion of a provision for the fencing of vacant land devoted to such use renders the ordinance discriminatory and unreasonable.

The ordinance constitutes the exercise of both the regulatory and revenue functions delegated by the statute cited *supra*. The statute empowers the municipality to levy license or privilege taxes or excises for revenue and also for regulation under the police power in the interest of the public health, safety and general welfare; but there cannot be an arbitrary exertion of the power. An arbitrary classification for the purpose either of regulation or taxation would not satisfy the requirements of due process and the equal protection of the law, and so would contravene the Fourteenth Amendment of the Federal Constitution as well as our own constitution and laws. And this is so whether the power of classification be exercised by the state directly or by a political subdivision thereof to whom the power has been delegated. In either case, it is in the final analysis the exercise of a legislative discretion, and is subject to the constitutional guaranty. But this is the only limitation upon the state's power to classify businesses and occupations for revenue or regulation; and the authority of the state may be delegated to its municipalities. *Bradley* v. *Richmond*, 227 *U. S.* 477; 33 *S. Ct.* 318; 57 *L. Ed.* 603. The state legislative authority has a wide discretion as to classification, and even though the distinction be narrow, it suffices if reasonably related to the object of the legislation. There may be a reasonable classification of the objects of the legislation or of the per-

sons whom it affects. The state has a broad discretion in the selection of the subjects of a special tax burden. The courts may intervene only to prevent arbitrary action; and the burden of proof is upon him who asserts an unjust and illegal discrimination. "The rule of equality permits many practical inequalities. * * * What satisfies this equality has not been and probably never can be precisely defined." *New York Rapid Transit Corp.* v. *City of New York,* 303 *U. S.* 573; 58 *S. Ct.* 721; 82 *L. Ed.* 1024. In *Bradley* v. *Richmond, supra,* a local ordinance distinguished, as respects the *quantum* of the tax levy, between private bankers engaged in the business of lending money at high interest rates upon salaries and household furniture and those whose business it was to lend money on commercial securities; and it was suggested even there that since there was no showing that these bankers "were doing the same business," the classification was not capricious.

The classification meets the constitutional test of reasonableness if it rests upon some ground of difference having a fair and substantial relation to the object of the legislation. And, where the act levies an excise, the "object" in constitutional intendment is the raising of revenue, not the purpose for which the revenue is to be used. *Colgate* v. *Harvey,* 296 *U. S.* 404; 56 *S. Ct.* 253; 80 *L. Ed.* 299; *New York Rapid Transit Corp.* v. *City of New York, supra.* And a classification adequate for regulatory purposes in the exercise of the reserved police power is ordinarily sufficient for the imposition of an excise tax. In the exercise of the power to license for regulation and revenue, distinctions may be made not only between businesses of different character, but also between businesses of the same general class where there are subtantial differences in the subject-matter and trade methods and practices related to the object of the legislation. The inquiry is whether there are differences which warrant separate treatment related to such distinctions. So much for the general power.

Here, the legislature, by the statute cited *supra,* has made a specific grant of power to the municipalities to license and regulate and tax for local revenue "dealers in second-hand

motor vehicles and parts thereof;" and the classification is
not inherently arbitrary or capricious. There are just and
reasonable distinctions between the businesses of dealing in
new and second-hand motor vehicles to support the classifica-
tion thus made. There is a distinct line of cleavage between
the two. The used-car business lends itself peculiarly to
trade practices and conditions affecting the public welfare
not to be found in the new-car business. The classification
is not vicious on its face; and prosecutors have not borne
the burden of proof in this regard. Indeed, there was no
evidence *aliunde*. A distinction in legislation "is not arbi-
trary, if any state of facts reasonably can be conceived that
would sustain it." *New York Rapid Transit Corp.* v. *City
of New York, supra.*

And it is a corollary of the foregoing considerations that
it was within the legislative province to levy a license tax
for regulation and revenue upon each and every place of
business of the subject class, even though under a common
ownership and management. Such an excise is not tainted
with the vice of arbitrary discrimination. It imposes no
inequality of burden under like circumstances and condi-
tions; and an ordinance framed to overcome the objection
now advanced would be open to the same objection, for one
having a dozen or more places of business scattered through-
out the community would be assessed the same license tax as
one having but one place of business, not at all comparable
with the former in volume of business done. The scheme
adopted here would seem to make for greater equality in the
distribution of the excise burden, although we intimate no
opinion as to the validity of the proposed alternative method.
What was done here was a proper exercise of legislative dis-
cretion. Strict equality is rarely, if ever, attainable in prac-
tice in the exercise of the taxing power. Here, physical unity
is the quality which renders the business subject to the license
tax; and this is a valid exercise of the statutory power.
Under the statute, the place where the business is conducted,
as well as the person who conducts the business, is subject
to the licensing power. Where there is a physical separation
of the premises, there is a separate and distinct location

whose business is treated as a single economic unit subject as such to the power exerted by the ordinance. There is no indication of illegal discrimination in the fact that another like establishment near to prosecutors', having approximately the same land area as the total of prosecutors' several places of business, is liable for only one license fee as the ordinance is written. As we have seen, an assessment based upon ownership alone would work the same type of inequality. The suggested criterion is plainly illusory. In the exercise of the statutory power, there is no necessary relation between the *quantum* of the excise and the volume of business done or space used, so as to require the assessment of the tax on a graduated scale or in accordance with the space used. Due process and the equal protection of the law impose no such obligation.

The license tax exacted by the ordinance is not confiscatory on its face; and there is no showing that the enforcement of the ordinance would be confiscatory as to prosecutors, assuming that that would be a proper inquiry on the record made. The *quantum* of the tax rests in sound discretion, guided by reason; and judicial intervention is permissible only where there has been an abuse of power. If the local legislative action is not clearly unreasonable or unduly oppressive or discriminatory, its policy is not a justiciable question. *Independent Warehouses, Inc.,* v. *Scheele,* 134 *N. J. L.* 133; affirmed, 331 *U. S.* 70; 67 *S. Ct.* 1062; 91 *L. Ed.* 967.

And, if it be conceded *arguendo* that the provision for the fencing of vacant land devoted to such use is invalid and unenforceable (we express no opinion as to this), the ordinance would not thereby be invalidated, for it embodies a clause that an ineffective or unconstitutional provision shall be deemed severable and shall not affect the remainder of the enactment. *Independent Warehouses, Inc.,* v. *Scheele, supra.*

The writ is dismissed, with costs.