# IN RE HINESLEY

## (150 N.W.2d 834)

(File No. 10334.  Opinion filed May 16, 1967)

**Frank L. Farrar,** Atty. Gen., **F. A. Winans,** Asst. Atty. Gen., Pierre, for appellant.

**D. O. Dillavou,** Deadwood, for respondent.

**Woods, Fuller, Shultz & Smith,** and **J. B. Shultz** and **Timothy J. Nimick,** Sioux Falls, for South Dakota Automobile Dealers Association, amicus curiae.

HANSON, Judge.

The Sanders-Hinesley Motor Sales of Sturgis was licensed to sell used motor vehicles. It was not licensed to sell new cars and was not a franchised new car dealer. On June 21, 1965 the Commissioner of Motor Vehicles suspended this dealer's license for a period of six months for selling new Ford automobiles under its used motor vehicle dealer's license. The dealer appealed to Circuit Court which reversed the order of the Commissioner and reinstated its license. In doing so the trial court held SDC 1960 Supp. 44.0211(2) unconstitutional. That question is now here on appeal by the Commissioner of Motor Vehicles. The disputed portion of SDC 1960 Supp. 44.0211(2) reads:

> "That if the applicant desires to sell, solicit, or advertise the sale of new and unused motor vehicles, he must have a bona fide contract or franchise in effect with the manufacturer or distributor of the motor vehicle, or motor vehicles, he proposes to deal in."

The trial court largely relied on the reasoning of Joyner v. Centre Motor Co., 192 Va. 627, 66 S.E.2d 469 and quoted therefrom as follows:

> "The vice in and resultant unconstitutionality of this legislation is that it presupposes that unenfranchised dealers constitute a class who alone are capable of fraudulent and sharp practice, and that dealers who

hold franchises are immune from and incapable of committing the wrongs and dishonest acts sought to be guarded against.

"However **bona fide** the assertion that this legislation is for the public welfare, and though earnest effort be made to impart to it the appearance of fairness and equality, its sole effect is to discriminate against all unenfranchised dealers and grant and secure special privileges to those few who are enfranchised, and this is done without any resultant benefit or protection to the general public. * * * The classification made and the restrictions imposed foster and protect the commercial interests of the enfranchised dealers but the classification is unnatural and unreasonable and the restrictions are not in the interests of the public health, morals, safety or general welfare."

Similar regulatory provisions in Nebraska and Ohio were struck down in Nelsen v. Tilley, 137 Neb. 327, 289 N.W. 388, 126 A.L.R. 729, and by the Cuyahoga County Court of Appeals in Ohio Motor Vehicle Dealers & Salesmen's Licensing Board v. Memphis Auto Sales, 103 Ohio 347, 142 N.E.2d 268. It should be noted, however, that each of these courts specifically recognize the authority of the legislature to enact regulatory measures governing the sale of new and used automobiles. Only the means of regulation was considered to be constitutionally offensive. Nelsen v. Tilley, supra, was decided in 1939. The Nebraska Court conditioned its opinion with the following pertinent observation:

"Liberty of contract and the right to use one's property as one wills are fundamental constitutional guarantees, but the degree of such guarantees must be determined in the light of social and economic conditions existing at the time the guaranty is proposed to be exercised, rather than at the time the Constitution was approved, otherwise legislative power becomes static and helpless to regulate and adjust to new conditions constantly arising. * * * The balance between due process and the police power is therefore more or less unstable, as it

must necessarily keep pace with the economic and social orders. As the exercise of the police power increases to meet new conditions, the protection of the due process clauses must necessarily recede to a corresponding degree."

Since 1939 the automobile industry has multiplied in size and complexity. The automobile has become a social and economic necessity furnishing means of transportation for nearly everyone in every walk of life. It has displaced most other means of local and long distance carriage. Multi-car families with multi-car garages are common. The pickup has replaced the horse on farms and ranches. Motorized vehicles are now used by hunters and fishermen to reach remote areas, to take skiers up mountain slopes, and to carry weary golfers over the tortious terrain of their courses. A nationwide network of super highways has been constructed. Motels are replacing hotels. Highway and motor vehicle departments are fast becoming the largest units of state and local governments. Governmental regulation of every form has followed in the wake of such growth. The so-called automobile dealer franchise acts enacted by Congress and several states are perhaps the most far reaching. The federal act seeks to equalize the economic relationship between motor vehicle manufacturers and dealers by giving dealers a right of action for damages when a manufacturer has not used good faith in performing its obligations under a dealer franchise or in terminating it. State statutes generally require automobile manufacturers to obtain a license. Such license may be denied, suspended, or revoked by the state on numerous grounds including "any act unfair to a dealer". These acts have been held constitutional. See Anno. 7 A.L.R.3d 1173.

When considering the constitutionality of any statute there is a presumption of validity and no statute should be held unconstitutional "unless its infringement of constitutional restrictions is so plain and palpable to admit of no reasonable doubt", State v. Black Hills Transportation, 71 S.D. 28, 20 N.W.2d 683. Furthermore, a court does not sit as a super-legislature to determine the wisdom of the legislation. State v. Nuss, 79 S.D. 522, 114 N.W.2d 633. The court went on to point out in the Nuss case

that "Although freedom of contract has traditionally been considered to be the general rule and economic restraint the exception, which could be justified only under exceptional circumstances, there is no longer much question concerning the broad discretion possessed by the legislature to regulate any and all business for the protection of the health, safety, morals, and general welfare of the people * * * the term affected with a public interest means 'no more than that an industry, for adequate reason, is subject to control for the public good.' Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed.2d 940; Olsen v. Nebraska, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305." Beyond question therefore our legislature has authority under the police power to regulate the sale of motor vehicles for the protection and general welfare of the public. See Anno. in 57 A.L.R.2d on subject of "Regulation or licensing of business of selling motor vehicles", p. 1265.

In adopting regulatory measures affecting the sale of motor vehicles "the legislature may properly differentiate between dealers in new vehicles and dealers in used vehicles", 7 Am.Jur.2d, Automobiles and Highway Traffic, § 29, p. 619, also see Ring v. Mayor and Council of Borough of N. Arlington, 136 N.J.L. 494, 56 A.2d 744, aff. 1 N.J. 24, 61 A.2d 508, and 420 Broad Ave. Corp. v. Borough of Palisades Park, 137 N.J.L. 527, 61 A.2d 23. In considering whether an Oklahoma law regulating the practice of optometry violated the Equal Protection Clause of the Fourteenth Amendment by subjecting opticians to the regulatory system and exempting sellers of ready-to-wear glasses the U. S. Supreme Court said "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. Semler v. State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. The legislature may select one phase of one field and apply a remedy there, neglecting the others. A. F. of L. v. American Sash Co., 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222. The prohibition of the

Equal Protection Clause goes no further than the invidious discrimination." Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563.

The most recent case on the subject, Louisiana Motor Vehicle Com'n v. Wheeling French, 235 La. 332, 103 So.2d 464, upholds the constitutionality of a statute limiting the sale of new and used motor vehicles to dealers holding a bona fide contract or franchise with a manufacturer or distributor of new and unused motor vehicles. The court observed "that the production, transportation and marketing of automobiles is unquestionably a proper subject for regulation by the Legislature under its police power. Motor vehicles are economic necessities in modern living and with the strides which have been made in horsepower of engines, electrical and other equipment essential to present day traffic conditions, the automobile is a complicated device and the average citizen who owns one has little, if any, knowledge of its mechanical operation. Consequently, he necessarily must rely upon the representation and warranty of the manufacturer, furnished through a responsible dealer, for the servicing of his car. In the past, new and unused cars were sold to the public exclusively by franchised dealers under direct contract with and under the rules and regulations required by the manufacturer. But, today, as the result of aggressive competition existing between dealers to capture public favor with their particular product and the large output of the manufacturers, many new and unused cars are sold by second-hand or 'used car lot' dealers who are not always financially responsible and thus create an ever increasing hazard to the buying public. It is evident, therefore, that it was to curtail this hazard,   *   *   * that the Legislature enacted the statute now under consideration." In rejecting the argument the regulation created a monopoly to a favored few the court said "We think it too plain for extended discussion that the numerous automobile dealers engaged in the business of selling new and unused cars in this State under franchises from various domestic and foreign manufacturers have no monopoly which creates a restraint of trade to the public's disadvantage. On the contrary, it is manifest that this business produces more open competition through advertisement, sales promotion and other media than any other that comes to our

mind and we think that it is truly representative of free enterprise as practiced in a democracy."

■ ■ We, likewise, conclude that SDC 1960 Supp. 44.0211(2) is a valid exercise of the police power. Once the right to regulate a particular endeavor is determined to be within the police power "debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment". Norwood v. Parenteau, 75 S.D. 303, 63 N.W.2d 807.

Reversed.

HOMEYER, P. J., and ROBERTS and RENTTO, JJ., concur.

BIEGELMEIER, Judge (dissenting).

Respondent Motor Sales prevailed in the circuit court, the Attorney General appealed and filed a brief on behalf of the Commissioner of Motor Vehicles. This court granted permission for amicus curiae to file a brief. Both briefs supported the constitutionality of SDC 1960 Supp. 44.0211. Unfortunately for its own business, the court's information and perhaps for constitutional law respondent did not appear or file a brief here.

As the majority opinion cites and concedes the Nebraska Supreme Court in 1939, the Virginia Supreme Court of Appeals in 1951 and an Ohio Appellate Court in 1957 have stricken down as unconstitutional legislative enactments such as the challenged SDC 1960 Supp. 44.0211(2). All that is said in the majority opinion of the growth of the automobile industry and its place in our society, the power of the legislature to regulate the sale of motor vehicles to prevent fraud under the police power, and the presumption of constitutionality of legislative acts was considered in the opinions cited and to me effectively and conclusively answered. Those interested are referred to them for their reasoning and logic, though some pertinent quotations therefrom are included here. Cf. Rebsamen Motor Co. v. Phillips, 226 Ark. 146, 289 S.W.2d 170, 57 A.L.R.2d 1256, and see note thereto in 57 A.L.R.2d 1265, 1275, and to the Nebraska opinion in 126 A.L.R. 740.

The Nebraska court recognized constitutional guarantees were to be determined "in the light of social and economic con-

ditions existing at the time the guaranty is proposed to be exercised, rather than at the time the Constitution was approved", that the motor vehicle industry "has grown to huge proportions" and motor vehicles "once luxuries, are now necessities". Then Justice Carter writing for a unanimous court said:

> "It is clear that the state cannot prohibit the ordinary business of buying and selling new or used motor vehicles. * * * It may * * * regulate a business * * * if it may become a medium of fraud. * * * But the legislature, under the guise of regulation, may not indulge in * * * the destruction of lawful competition, or the creation of trade restraints tending to establish a monopoly. (The court cited the Nebraska statute in effect the same as that challenged here) We agree that the limitation contained in subdivision (a) creates a monopoly in the persons enfranchised by the manufacturers of motor vehicles and thereby contravenes the Fourteenth Amendment to the Constitution of the United States, and sections 1, 3, 16 and 25, art. I, of the Constitution of Nebraska." Nelsen v. Tilley, 137 Neb. 327, 289 N.W. 388, 126 A.L.R. 729.

The Joyner v. Centre Motor Co., 1951, 192 Va. 627, 66 S.E.2d 469, opinion says of the statute:

> "Its sole effect is to forbid to some the right to sell any or all new cars and by force of law grant that special right and valuable business privilege to a preferred few. And those select few are determined upon and limited to those to whom motor vehicle manufacturers * * * decide to award contract franchises. (The court quoted from the Nebraska opinion and said it was in accord with its holding) that the above-quoted portion of the Act which gave the exclusive right to sell new cars to enfranchised dealers was unconstitutional."

The Ohio and Arkansas opinions restate and approve these principles in well considered opinions, which, until the Louisiana case cited by the majority, were unanimous in declaring such statutes unconstitutional. All of these cover a period from 1939

to 1957 and if current thought is of any significance the Nebraska court in 1963 cited and quoted from its Nelsen v. Tilley opinion with approval.

Perhaps one point should be made clear. As the Nebraska court stated, a person may do business with whomsoever he desires or refuse business relations with any person he sees fit. That is his concern and judgment. But that is a separate and distinct proposition from the state legislature by law prohibiting a person from engaging in business without the whim or pleasure of a manufacturer of a product. It is one thing for Ford, General Motors or other corporations to grant a franchise to or contract with dealers of their choice, but another for the legislature to delegate and limit that right by law to such corporation. The manufacturer may refuse to deal or sell to a person, but the state cannot deny, or by a fine or jail sentence punish, the exercise of that right. Yet that is what the state has here decreed and determined to enforce by penalties and sanctions. SDC 1960 Supp 44.0211 prohibits any person from engaging in the business of selling motor vehicles without the license therein required and no application for the license may be granted without the franchise from the manufacturer. SDC 1960 Supp. 44.9953 makes a violation of SDC 1960 Supp. 44.0211 a crime, a misdemeanor punishable, probably under SDC 13.0607, by a jail sentence up to one year, a $500 fine or both. In addition, the license of a used car dealer may be revoked by the Commissioner, or as here determined, suspended for the reason the dealer sold a new car without the license which was denied to it, not by a state official for some valid reason or judgment but only because a manufacturer decided not to give it a franchise. Such statutes did not meet the constitutional standards of the courts cited nor do they mine. These standards and philosophy have been stated before in my dissents in State v. Jorgenson, 81 S.D. 447, 464, 136 N.W.2d 870, 880, discussing constitutional limits of the legislature as to appropriations, and State ex rel. Kornmann v. Larson, 81 S.D. 540, 552, 138 N.W.2d 1, 8, with reference to the power retained in the people by referendum. It seems the court is taking another step in extending governmental control over the individual's personal liberties and rights in which I cannot concur and am required to dissent.