**DIRECT AUTO BUYING SERVICE, INC.,** a Georgia Corporation, and Keith T. Carlyle, Plaintiffs and Appellees,

v.

**Buddy WELCH, Director of the Department of Public Safety for the State of South Dakota, Defendant and Appellant.**

No. 13314.

Supreme Court of South Dakota.

Argued May 27, 1981.

Decided July 22, 1981.

David P. Olson, Rapid City, for plaintiffs and appellees.

Mark W. Barnett, Asst. Atty. Gen., Pierre, for defendant and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

1. United States Constitution, Art. I, § 8 provides:

 The Congress shall have power:

 . . . .

 To regulate commerce ... among the several states[.]

2. SDCL 32–6–1 provides (emphasis indicates verbiage added as per 1979 S.D.Sess.L. ch. 209, § 1):

 No person, copartnership, or corporation may engage in the business, either exclusively or in addition to any other occupation, of selling or manufacturing motor vehicles, new or used, or offer to sell, solicit, *act as a broker* or advertise the sale of motor vehicles, new or .used, without first having acquired a license therefor as provided in this chapter.

3. These statutes provide as follows (emphasis indicates verbiage added as per 1979 S.D. Sess.L. ch. 209, §§ 2 and 3):

 [SDCL 32–6–4.1] In the case of an applicant selling or offering to sell, solicit, *act as a broker* or advertise the sale of new motor vehicles, an

HENDERSON, Justice.

## ACTION

Appellant Buddy Welch, as Director of the South Dakota Department of Public Safety, appeals from the trial court's judgment dated October 20, 1980, which declared SDCL 32–6–1, SDCL 32–6–4.1 and SDCL 32–6–5 unconstitutional for being in violation of Art. I, § 8 of the United States Constitution, commonly referred to as the Commerce Clause.[1] This action was commenced by a complaint filed by appellees Direct Auto Buying Service, Inc. (DABS), a Georgia corporation, and Keith T. Carlyle requesting that the trial court declare, inter alia, these statutes unconstitutional. We affirm in part and reverse in part.

## FACTS

The parties stipulated to the facts which were submitted to the trial court. Condensed, they are as follows:

In October of 1979, appellee Carlyle applied to the South Dakota Department of Public Safety for a license to broker new motor vehicles pursuant to SDCL 32–6–1.[2] This application was subsequently denied due to appellee Carlyle's failure to comply with SDCL 32–6–4.1 and SDCL 32–6–5.[3]

established place of business shall mean a designated location wherein adequate facilities are maintained for reconditioning, and repairing either new or used motor vehicles. The term "adequate facilities" shall mean a building providing a suitable repair shop with space to repair, maintain, service and recondition one or more motor vehicles and equipped with ample tools, parts and accessories.

 Applicants holding licenses on July 1, 1974 shall be deemed licensed under this chapter, and entitled to renew the same.

 [SDCL 32–6–5] No license may be issued under this chapter to anyone, until the applicant furnishes proof satisfactory to the department of public safety, if the applicant desires to sell, solicit, *act as a broker* or advertise the sale of new and unused [sic] motor vehicles, that he has a bona fide contract or franchise in effect in this state with the manufacturer of the motor vehicle, or motor vehicles, he proposes to deal in.

Prior to his application, appellee Carlyle had entered into an agreement with appellee DABS to solicit orders for new motor vehicles in South Dakota.

Appellee DABS is in the business of selling new motor vehicles through individual brokers who are located throughout the United States. These brokers solicit individual orders, but do not enter into contracts on behalf of appellee DABS. The orders are forwarded to appellee DABS' home office in Atlanta, Georgia, where it decides to reject or fill each specific order. The vehicles sold by appellee DABS are obtained from various franchised automotive dealers in Michigan. The ordered vehicles are delivered to the respective purchasers, either by an individual driver or as part of a block shipment. Appellee DABS' brokers are not responsible for collecting any money for the vehicles aside from an initial deposit made by the customer which is sent in with the order.

Neither appellee has a bona fide contract or franchise in effect with any manufacturer of the vehicles that they sell. Appellees do not intend to perform repair or service work on the vehicles that they sell; however, all such vehicles do have manufacturers' warranties which provide for certain service work to be performed by franchised dealers of the manufacturer for a minimum of 12 months or 12,000 miles, whichever occurs first. All South Dakota automotive dealers with franchises are required to honor such warranties regardless of where or from whom the vehicle was purchased. Appellee DABS is not, and never has been, a registered foreign corporation doing business in South Dakota.

## ISSUE

Do SDCL 32–6–1, SDCL 32–6–4.1 and SDCL 32–6–5 violate the Commerce Clause of the United States Constitution?

## DECISION

Initially, we note that "[w]hen considering the constitutionality of any statute there is a presumption of validity and no statute should be held unconstitutional 'unless its infringement of constitutional restrictions is so plain and palpable to admit of no reasonable doubt.'" *In Re Hinesley*, 82 S.D. 552, 555, 150 N.W.2d 834, 836 (1967) (citation omitted). This Court has recently stated that "[e]nactments of the legislature should be upheld unless they are clearly and unmistakably unconstitutional." *People in Interest of T.L.J.*, 303 N.W.2d 800, 808 (S.D. 1981).

It is generally held that solicitation of orders for goods within one state by the agent of a foreign manufacturer or corporation, and the shipment of goods pursuant to such orders from another state, constitutes interstate commerce. *West Point Grocery Co. v. Opelika*, 354 U.S. 390, 77 S.Ct. 1096, 1 L.Ed.2d 1420 (1957). "At the same time, however, it has never been doubted that much state legislation, designed to serve legitimate state interests and applied without discrimination against interstate commerce, does not violate the Commerce Clause even though it affects commerce." *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664, 674 (1978).

The United States Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970) (citation omitted), laid down the criteria for determining the validity of state statutes affecting interstate commerce:

Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

■ This Court in *In Re Hinesley, supra,* held SDC 1960 Supp. 44.0211(2)[4] (the forerunner to SDCL 32–6–5) constitutional. Our holding in *Hinesley,* however, is not dispositive here. *Hinesley* was decided prior to the inclusion of brokers within the counterpart to SDC 1960 Supp. 44.0211(2), that is, SDCL 32–6–5. Also, *Hinesley* was resolved under the state's police power, and did not involve consideration of the Commerce Clause. Moreover, *Hinesley* anteceded the United States Supreme Court's decision in *Pike v. Bruce Church, Inc.,* supra. For these reasons, we believe that the constitutionality of the contested statutes must be determined under the test set forth in *Pike.*

Under *Pike,* there are three primary criteria that a statute must meet to pass constitutional muster, to wit: (1) The statute must regulate evenhandedly, *and* (2) it must only incidentally affect interstate commerce, *and* (3) its burden on interstate commerce cannot be clearly excessive in relation to the benefit derived by the public. We will examine the statutes in question under the burden/benefit analysis of *Pike*; our ultimate holding in accord with this particular analysis renders the other two tests in *Pike* moot.

■ With regard to the burden placed on interstate commerce by the statutes herein involved, we premise our discussion with the basic concept that "[t]he very purpose of the Commerce Clause was to create an area of free trade among the several States." *McLeod v. Dilworth Co.,* 322 U.S. 327, 330, 64 S.Ct. 1023, 1026, 88 L.Ed. 1304, 1307 (1944); *see also Exxon Corp. v. Governor of Maryland,* 437 U.S. 177, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). Also, it is the practical effect and consequences of the statutes in question that must be examined in determining their burden, if any, on interstate commerce. *Nippert v. Richmond,* 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760 (1946).

■ The facts here indicate that appellee DABS is currently soliciting orders, via individual brokers, in 47 states. To require appellee DABS to maintain "adequate facilities [for the] reconditioning, and repairing" of the vehicles it sells, SDCL 32–6–4.1 would undoubtedly greatly burden its operation. Appellee DABS would have to either provide its customers with these types of facilities in each state that had such a requirement in which it sold vehicles or, in the alternative, greatly reduce its geographical scope of business. As discussed infra, automotive repair facilities are readily available to the appellee DABS' customers due to the warranties provided with each vehicle; these warranties must be honored by every franchised dealer of the vehicle's make, regardless of whether or not the vehicle was purchased from appellee DABS or a franchised dealer.

Pursuant to SDCL 32–6–5, appellee DABS is required to procure a franchise with every manufacturer from which it purchases vehicles. The facts indicate that appellee DABS does broker vehicles for all four major American auto manufacturers and their respective separate divisions. Since it brokers vehicles in nearly every state of the country and obtains them from different manufacturers, it cannot be reasonably maintained that the franchise requirement of SDCL 32–6–5 would not impede DABS' ability to effectively conduct business.

We conclude that the requirements of the statutes in question effectively place a burden on interstate commerce. Our next consideration, then, must focus upon the local putative benefit, if any, these statutes serve. *Pike v. Bruce Church, Inc.,* supra.

In *State v. Wood,* 51 S.D. 485, 215 N.W. 487 (1927), this Court reviewed S.D.Rev. Code 1919, § 7743 requiring patent medicines to be sold only by licensed pharmacists. We stated in *Wood*:

> tract or franchise in effect with the manufacturer or distributor of the motor vehicle, or motor vehicles, he proposes to deal in."

---

4. SDC 1960 Supp. 44.0211(2) provided:
    "That if the applicant desires to sell, solicit, or advertise the sale of new and unused [sic] motor vehicles, he must have a bona fide con-

The vital question is: Will this act accomplish what is claimed for it? Both the briefs of appellant and of the amicus curiae seem to assume that restricting the sale of such medicines to registered pharmacists will protect the public from all the ills that might result from unrestricted sale. But they do not point out how the public are [sic] protected. It is suggested that a pharmacist, to obtain his license, must be of good moral character, and that would protect the public from verbal misbranding, fraud, and dangerous medicines; but why restrict the sale to pharmacists only, when there are many other men of good moral character? If moral character is a sufficient guaranty, the statute might require vendors to be men of good moral character; but there can be no reason for requiring them to be druggists. Again, it is urged that pharmacy is a profession with a code of ethics; but pharmacy is not the only profession with a code of ethics. It is argued that pharmacists have knowledge of the effect of medicines they sell; this is no doubt some protection against accidental injury resulting from ignorance, but it is not plain that pharmacists do know the ingredients of patent and proprietary medicines, or that they are required to use or possess any knowledge in making a sale of such medicines. If one has a doctor's prescription filled at a drug store, he buys not the medicine alone, but the druggist's knowledge and skill in dispensing it; but if he were to buy Watkins' Pain-Oleum at the drug store, what more would he buy than if he bought elsewhere?

Id., 51 S.D. at 489–490, 215 N.W. 488–489. We held in *Wood* that the statute in question did not protect the public good and, therefore, was unconstitutional.

Although *Wood* dealt with the valid exercise of a state's police power, we believe that the reasoning therein is analogous to the statutes involved in this appeal. Essentially, this Court stated in *Wood* that it made no difference whether the public purchased patent medicines from a licensed pharmacist or a grocer for, in either event, the public received the same product. It appears to us that, in the case presently before the bar, it is irrelevant whether a vehicle is purchased from a franchised dealer in South Dakota or a franchised dealer in Detroit, Michigan. The purchaser would receive the same product and warranty in either case.

As previously mentioned, SDCL 32–6–4.1 requires brokers to have designated repair facilities to service the vehicles they sell. However, as is admitted in the parties' Stipulation of Facts, the purchaser of any new American-made vehicle is entitled to warranty service work performed by any franchised dealer. The manufacturer's warranty must be honored by any franchised South Dakota dealer. Once the warranty expires, the purchaser may have his vehicle serviced by a franchised dealer or any other automotive repair shop. Therefore, we are unable to see why a requirement that brokers maintain adequate automotive repair facilities would promote any local public benefit.

The franchise requirement of SDCL 32–6–5 likewise appears barren of any local public benefit. The dealers in Detroit from which appellee DABS purchases its vehicles are franchised; to require each individual broker in each state to procure an additional franchise from each manufacturer would not, in our opinion, effectuate a legitimate local public interest. To stack franchise upon franchise would only serve to saturate the administrative and legal network of this state and this, in and of itself, cannot be said to promote any local public benefit.

SDCL 32–6–4.1 and SDCL 32–6–5, in their practical effect, significantly impede interstate trade of vehicles within South Dakota. This type of impedance is exactly what the Commerce Clause was designed to prevent, absent any overriding consideration involving the public good. *See Buck v. Kuykendall*, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623 (1925); *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 381 N.E.2d 908 (1978).

■ We hold that, to the extent that a broker involved in interstate commerce must (1) obtain a bona fide contract or franchise in effect in this state with the

manufacturer of each motor vehicle in which he brokers, and (2) establish adequate facilities for reconditioning and repairing the sold vehicles, SDCL 32–6–4.1 and SDCL 32–6–5 violate the Commerce Clause of the United States Constitution and therefore are unconstitutional.

■ With regard to challenged statute SDCL 32–6–1, we hold that under the provisions of *Pike v. Bruce Church, Inc.*, supra, it is constitutional insofar as it does not entail SDCL 32–6–4.1 and SDCL 32–6–5 as prerequisites to obtaining a license. This Court has previously held that the unconstitutional provisions of a statute or act may be extracted and the remainder left intact. *South Dakota Ass'n, etc. v. State Dept. of Revenue*, 280 N.W.2d 662 (S.D.1979); *Hogen v. South Dakota State Board of Transportation*, 245 N.W.2d 493 (S.D.1976); *Application of Nelson*, 83 S.D. 611, 163 N.W.2d 533 (1968).

Accordingly, SDCL 32–6–1 is constitutionally qualified as follows:

> No person, copartnership, or corporation may engage in the business, either exclusively or in addition to any other occupation, of selling or manufacturing motor vehicles, new or used, or offer to sell, solicit, act as a broker or advertise the sale of motor vehicles, new or used, without first having acquired a license therefor as provided in this chapter.

By this holding, we do not in any way negate or reduce the applicability of SDCL 32–6–3, which deals with bond requirements.

Consistent with this opinion, the judgment of the trial court is affirmed in part and reversed in part.

All the Justices concur.